UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY LEE WILLIAMS,

        Plaintiff,

v.

                                                   Case No. 23-cv-12868
                                                 HON. MARK A. GOLDSMITH

A. MELVIN et al.,

        Defendants.
_____/

**OPINION AND ORDER DISMISSING IN PART PRISONER CIVIL RIGHTS COMPLAINT (Dkts. 1 and 6)**

**I. INTRODUCTION**

    Plaintiff Henry Lee Williams, currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan, has filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Dkt. 1). Williams sues Michigan Department of Corrections (MDOC) employees Sergeant A. Melvin, Correctional Officer A. Blalock, and Correctional Officer R. Winter in their individual and official capacities for violating his constitutional rights during a strip-search. The Court has granted Williams leave to proceed without prepayment of the filing fee for this action. Dtk. 5; see 28 U.S.C. § 1915(a)(1). On December 27, 2023, Williams filed an amended complaint (Dkt. 6).[1] Having reviewed the matter, the Court concludes that the initial complaint and the amended or

---

[1] The Court notes that an amended complaint generally supersedes all prior complaints. See Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 306 (6th Cir. 2000) ("Plaintiff's first amended complaint, not his original complaint, was the legally operative complaint."). However, at this stage it is unclear whether Williams intends for the amended complaint to supplement the original or supersede it. Therefore, the Court will consider allegations and claims in both pleadings.

supplemental complaint are subject to partial dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), for failing to state a claim and immunity.

## II. BACKGROUND

Williams alleges that on May 21, 2022, while incarcerated at the G. Robert Cotton facility, he and four other prisoners were placed in handcuffs and taken to the control center where Blalock walked them through a body scanner to be searched for illegal contraband. Compl. at PageID.7; Am. Compl. at PageID.29. Williams alleges that under Melvin's orders, Blalock then took Williams and the other prisoners into a room and performed a strip-search. Blalock instructed Williams to remove his pants; however, Williams could not because of his handcuffs. Compl. at PageID.7. Melvin ordered Williams to "make it work." Am. Compl. at PageID.29. Blalock and Winter then removed Williams's pants and underwear. Williams stated that he told Blalock, "hold on, stop." Compl. at PageID.7. Blalock continued the search, "lifted [Williams's] testicles and order[ed] him to bend over and spread." Id. He also avers that Blalock "grabbed and pulled his testicles" which caused him pain. Am. Compl. at PageID.30. Williams was then taken to segregation and strip-searched again. Id. Williams contends alleges that he was "degraded, molested, assaulted, humiliated, and violated." Compl. at PageID.7.

Williams claims that the strip-search violated his rights under the Fourth, Eighth, and Fourteenth Amendment, violated MDOC policy and state law, and constituted sexual assault. He further claims that Melvin and Winter failed to intervene and stop the search. Williams alleges that he suffered mental distress, stress, pain, and depression because of the conduct. Additionally, he claims that he has experienced retaliation and discrimination for filing grievances on the incident. Am. Compl. at PageID.30.

2

### III.  ANALYSIS

Williams has been granted leave to proceed without prepaying the filing fee in this action. Williams has been granted in forma pauperis status. Dkt. 5. Under the Prison Litigation Reform Act of 1996 (PLRA), the Court is required to sua sponte dismiss an in forma pauperis complaint before service on a defendant if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). The Court is similarly required to dismiss a complaint seeking redress against government entities, officers, and employees which it finds to be frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A. A complaint is frivolous if it lacks an arguable basis in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992).

A pro se civil rights complaint is to be construed liberally. Haines v. Kerner, 404 U.S. 519, 520–521 (1972). Nonetheless, Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The purpose of this rule is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (punctuation modified). While this notice pleading standard does not require "detailed" factual allegations, it does require more than the bare assertion of legal principles or conclusions. Id. at 555. Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555–556 (citations and footnote omitted).

To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege that: (i) he or she was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States; and (ii) the deprivation was caused by a person acting under color of state law. Flagg Bros. v. Brooks, 436 U.S. 149, 155–157 (1978). The plaintiff must establish the liability of each individual defendant by that person's own conduct. "Because vicarious liability is inapplicable [in] § 1983 suits, [a plaintiff] must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676 (citation omitted).

First, Williams fails to state an Eighth Amendment claim. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–527 (1984)).

To establish liability under the Eighth Amendment for a claim, a plaintiff must show (1) that he "objectively" was "incarcerated under conditions posing a substantial risk of serious harm," id. at 834, and (2) that the official acted with "deliberate indifference" to inmate safety, "meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" Reedy v. West, 988 F.3d 907, 912 (6th Cir. 2021) (quoting Farmer, 511 U.S. at 829, 834,

4

847). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. As relevant to Williams's claims, prisoners may be strip-searched under circumstances that are reasonably related to the legitimate penological interest of security and order. See Roden v. Sowders, 84 F. App'x 611, 613 (6th Cir. 2003) (citing Cornwell v. Dahlberg, 963 F.2d 912, 916 (6th Cir. 1992)).

Williams alleges that Blalock's grabbing his testicles and ordering him to "bend over and spread" caused him serious mental anguish and stress. As an initial matter, the United States Court of Appeals for the Sixth Circuit has held that an Eighth Amendment claim regarding a strip-search is not cognizable when the plaintiff has not alleged any physical injury from the strip-search. See Jackson v. Herrington, 393 F. App'x 348, 354 (6th Cir. 2010) (citing, inter alia, 42 U.S.C. § 1997e(e)); Harden–Bey v. Rutter, 524 F.3d 789, 795 (6th Cir. 2008)). Here, Williams does not allege that he sustained any physical injury as related to the strip-search. He further fails to allege any facts that the search was not reasonably related to legitimate penological interests.

Moreover, even accepting Williams's characterization of the strip-search as a sexual assault, he does not state an Eighth Amendment claim. "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment; this is true whether the sexual abuse is perpetrated by other inmates or by guards." Rafferty v. Trumbull Cnty., 915 F.3d 1087, 1095 (6th Cir. 2019) (punctuation modified, citations omitted). However, the Sixth Circuit Court has held that even incidents of sexual touching coupled with sexual remarks may not rise to the level of an Eighth Amendment violation so long as the offensive conduct was "isolated, brief, and not severe[.]" Rafferty, 915 F.3d at 1095 (quoting Jackson v. Madery, 158 F. App'x 656, 662 (6th

5

Cir. 2005)); see also Solomon v. Mich. Dep't of Corr., 478 F. App'x. 318, 320–321 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); Jackson, 158 F. App'x. at 661 (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); Johnson v. Ward, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment). In this case, Williams's sole allegation that Blalock lifted his testicles and ordered him to bend over and spread during a brief, isolated strip-search does not meet Eighth Amendment standards. Therefore, he fails to state a claim.

Second, to the extent that Williams raises a First Amendment retaliation claim, he does not allege sufficient facts to support such a claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. Id. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. See Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

Here, Williams alleges that he "has also experienced several forms of retaliation and

6

discriminatory harassment since filing writing and verbal complaints." Am. Compl. at PageID.30. However, he does not allege any material facts showing the nature of the alleged retaliation, nor who committed the retalation. "[A]lleging merely the ultimate fact of retaliation is insufficient." Murphy v. Lane, 833 F.2d 106, 108 (7th Cir. 1987) (punctuation modified). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" Harbin-Bey v. Rutter, 420 F.3d 571, 580 (6th Cir. 2005); (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1538–1539 (6th Cir. 1987)); see also Murray v. Unknown Evert, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (punctuation modified)). For these reasons, Williams' retaliation claim must be dismissed.

Third, to the extent Williams attempts to assert an equal protection claim under the Fourteenth Amendment, he fails to state a claim. Prisoners are entitled to equal protection under the law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The linchpin of an equal protection claim is that the government has intentionally treated people who are similarly situated in a different manner without a rational basis for the disparate treatment. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Ross v. Duggan, 402 F.3d 575, 587–588 (6th Cir. 2004). Prisoners are not members of a protected class for equal protection purposes due to their status as prisoners. Jackson v. Jamrog, 411 F.3d 615, 619 (6th Cir. 2005); Wilson v. Yaklich, 148 F.3d 596, 604 (6th Cir. 1998). However, when a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest. City of Cleburne v. Cleburne

7

Living Ctr., Inc., 473 U.S. 432, 440 (1985).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. Id. at 265–266. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Umani v. Mich. Dep't of Corr., 432 F. App'x 453, 458 (6th Cir. 2011).

Williams's equal protection claim is devoid of any factual support. He fails to indicate with any specificity how he was treated differently from others who are similarly situated. He states that the strip-search was conducted based on the belief that he possessed illegal contraband. He does not allege any facts supporting that the search was discriminatory in nature, nor does he explain how he was discriminated against after the fact. Conclusory allegations of unconstitutional conduct are insufficient to state a claim under § 1983. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555–557; Crawford-El v. Britton, 523 U.S. 574, 588 (1998); Moldowan v. City of Warren, 578 F.3d 351, 390–391 (6th Cir. 2009). Williams thus fails to state a claim upon which relief may be granted as to this issue.

Fourth, to the extent that Williams asserts claims alleging violations of MDOC policies and procedures and/or state law, he fails to state a clam. Williams appears to allege the strip-search violated MDOC policies and state law. Section 1983 provides a remedy for violations of federal law, not prison policy or state law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) (holding that claims under § 1983 can be brought only for "deprivations of rights secured by the

8

Constitution and laws of the United States"). Alleged violations of MDOC policy or Michigan law do not rise to the level of a violation or deprivation of a federal constitutional right cognizable under § 1983. See Grinter v. Knight, 532 F.3d 567, 574 (6th Cir. 2008) (ruling that "[f]ailing to follow proper procedures is insufficient to establish an infringement of a liberty interest"). Williams' claims alleging violations of MDOC policies or procedures or violations of Michigan law fail to state a claim upon which relief may be granted under § 1983.

Fifth, the Court concludes that the MDOC, and its employees on claims against them in their official capacities, are entitled to Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution bars civil rights actions against a State and its agencies and departments unless the State has waived its immunity and consented to suit or Congress has abrogated that immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). The State of Michigan has not consented to being sued in civil rights actions in the federal courts, Johnson v. Unknown Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004), and Congress did not abrogate state sovereign immunity when it enacted 42 U.S.C. § 1983, Quern v. Jordan, 440 U.S. 332, 341 (1979). Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief" against a State and its agencies, but it does not preclude prospective injunctive relief. McCormick v. Miami Univ., 693 F.3d 654, 661–662 (6th Cir. 2012) (punctuation modified). The Eleventh Amendment immunity applies to state employees who are sued in their official capacities. See Hafer v. Melo, 502 U.S. 21, 25 (1991). Williams does not seek prospective injunctive relief. Thus, his claims for monetary damages and non-prospective injunctive relief against Defendants in their official capacity must be dismissed.

Finally, the Court finds that Williams' Fourth Amendment claims against Defendants are not subject to summary dismissal. While Williams may or may not ultimately prevail on such

9

claims, he has pleaded sufficient facts to state a potential claim for relief.

## IV. CONCLUSION

Based upon the foregoing discussion, the Court concludes that Williams fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983 as to his claims based upon violations of his First, Eighth, and Fourteenth Amendment rights, and state-law claims. Accordingly, the Court dismisses those claims pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

The Court dismisses Williams' claims for monetary damages against Defendants in their official capacities on the basis of immunity.

The Court further concludes that Williams' claims against Defendants concerning violations of his Fourth Amendment right to reasonable search and seizure survives the Court's initial screening process under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A and are not subject to summary dismissal.

SO ORDERED.

Dated: January 26, 2024  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge